UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF MAINE MARITIME MUSEUM FOR EXONERATION FROM OR LIMITATION OF LIABILITY | ) ) ) Docket No. 2:21-cv-00238-NT ) ) |

**ORDER ON MOTION FOR ENTRY OF DEFAULT JUDGMENT AND EXONERATION DECREE AS TO NON-APPEARING CLAIMANTS**

Before me is the Plaintiff's Motion for Entry of Default Judgment and Exoneration Decree as to Non-Appearing Claimants ("**Mot for Default J.**") (ECF No. 34). For the reasons stated below, the motion is **DENIED**.

**BACKGROUND**

Less than a month after the "knock-down"[1] of the Schooner Mary E, Plaintiff Maine Maritime Museum, owner of the Mary E, filed a complaint seeking exoneration from or limitation of liability pursuant to the Limitation of Liability Act (the "**LOL Act**" or the "**Act**"), 46 U.S.C. §§ 30501–12, and Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Compl. (ECF No. 1). The Complaint asserts that Maine Maritime Museum "used due diligence to make the subject vessel seaworthy and safe, and prior to and at the time of the loss which occurred on July 30, 2021, the subject vessel was properly equipped and supplied, and

---

[1] No definition of the term "knock-down" was provided in the Complaint. I take the term to describe a sailboat lying over far enough to put the mast(s) into the water.

in all respects seaworthy and fit for the services for which she was engaged." Compl. ¶ 3. In addition, the Complaint asserts that Maine Maritime Museum "denies that it caused or contributed to the injuries aforesaid by any negligence or fault on the part of the Plaintiff or of those for whom the Plaintiff is responsible, and Plaintiff denies that any such loss, damage, injury and destruction was done, occasioned by, or occurred with any privity or knowledge of your Plaintiff." Compl. ¶ 7.

As required under Supplemental Rule F, I established a "monition period,"[2] ending November 15, 2021, during which time Maine Maritime Museum mailed notice to known potential claimants and published notice in the *Portland Press Herald* stating that potential claimants were to file claims within the monition period or face the entry of default and default judgment. Decl. of William H. Welte ¶¶ 9–13 (ECF No. 21); Decl. of William H. Welte Ex. B (ECF No. 21-2). Three individuals subsequently filed claims against Maine Maritime Museum: Karen Baldwin (ECF No. 13), Allison Poirier (ECF No. 15), and Thomas Poirier (ECF No. 16). Each of these claimants settled with Maine Maritime Museum and their claims were dismissed. Stipulation of Dismissal of Claims of Allison Poirer [sic] and Thomas Poirer [sic] with Prejudice (ECF No. 36); Stipulation of Dismissal as to Claims of Karen Baldwin (ECF No. 38).

---

[2] The term "monition period" describes the period of time a claimant has to make a claim. The term apparently derives from the requirement of Rule F(4) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions that the court must "admonish[ ]" all persons asserting claims to file their claims by a specific date.

2

On November 16, 2021, after the monition period had ended, Maine Maritime Museum moved for entry of default against all claimants who had not filed claims by the November 15, 2021, deadline. Mot. for Entry of Default (ECF No. 20). In accordance with Federal Rule of Civil Procedure 55(b) and Supplemental Rule F(5), the clerk of court granted the Plaintiff's motion. Order (ECF No. 22).

On March 2, 2022, the Plaintiff moved for default judgment and an exoneration decree as to all non-appearing claimants. Mot. for Default J. (ECF No. 34). After reviewing the Plaintiff's initial motion, I held a telephonic conference (ECF No. 37) with William Welte, counsel for the Plaintiff, on March 7, 2022, during which time I asked for supplemental briefing on two issues: (1) the Plaintiff's entitlement to an exoneration decree absent some factual determination on the question of Maine Maritime Museum's degree of culpability, and (2) the Plaintiff's entitlement to default judgment, particularly as this form of relief is impacted by the special consideration of minors and "incompetent" persons contained in section 30508(d) of the LOL Act and Federal Rule of Civil Procedure 55. Now, supplemental briefing has been submitted, and the Plaintiff once again asks me to grant its motion for default judgment and an exoneration decree. Maine Maritime Museum's Suppl. Br. in Supp. of its Mot. for Entry of Default J. with Exoneration Decree as to Non-Appearing Claimants (ECF No. 39).

## DISCUSSION

The LOL Act limits shipowner liability to "the value of the vessel and pending freight" for claims "arising from any embezzlement, loss, or destruction of any

property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner." 46 U.S.C. § 30505. To initiate the protections of the Act, "[t]he owner of a vessel may bring a civil action in a district court." 46 U.S.C. § 30511(a). Actions to limit liability under the LOL Act are governed by Supplemental Rule F of the Federal Rules of Civil Procedure. Fed. R. Civ. P. Suppl. R. F; see also Benedict on Admiralty, Vol. 3, § 1 (Lexis 2022). "The Federal Rules of Civil Procedure also apply to [limitation] proceedings except to the extent that they are inconsistent with [the] Supplemental Rules." Fed. R. Civ. P. Suppl. R. A(2).

The LOL Act was passed in 1851, motivated by the desire to incentivize maritime investment and protect the country's shipping interests.[3] *See* Graydon S. Staring, *The Roots and False Aspersions of Shipowner's Limitation of Liability*, 39 J. Mar. L. & Com. 315, 326–27 (2008). "The animating premise of the statute is that the owner of a vessel is generally an absentee who entrusts the vessel to the command of a captain whom the owner has limited ability to supervise or control once the vessel

---

[3] The LOL Act has been criticized for being "outmoded," *Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164, 1180 (5th Cir. Unit A Sept. 1981), and a product of historical conditions that "no longer exist," *Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558, 1565 (11th Cir. 1985). It has also been defended as similar to how the modern corporate structure insulates owners from risk. *See* Graydon S. Staring, *The Roots and False Aspersions of Shipowner's Limitation of Liability*, 39 J. Mar. L. & Com. 315, 328–30 (2008). In its procedural mechanisms, the LOL Act is unique in that it sets up what might be termed a "reverse lawsuit." That is, in invoking the protections of the LOL Act, the vessel owner, as opposed to a claimant, usually makes the first move in court to ward off what at that point may be purely hypothetical lawsuits. And a limitation action may be concluded through a default judgment, meaning that the court only ever hears the shipowner's side of the story. I take no position on the propriety of the LOL Act, but this is an area in which I tread carefully in order to protect the rights both of shipowners as well as the less visible individuals impacted by the events surrounding such litigation.

4

is on the sea." *Bensch v. Est. of Umar*, 2 F.4th 70, 73 (2d Cir. 2021). As the Second Circuit has explained: "[T]he Act loosens the normal rules of *respondeat superior* in admiralty cases by allowing shipowners to insulate their personal assets (beyond the value of the ship) in cases where any negligence is committed without the owner's privity or knowledge." *Id.* And, although the limitation of liability is reserved for owners without "privity or knowledge"—which suggests that it is used for shipowners who were not present at the time of the accident—in the admiralty context, "it has long been held that '[p]rivity and knowledge is a term of art meaning complicity in the fault that caused the accident.'" *Id.* (quoting *Blackler v. F. Jacobus Transp. Co.*, 243 F.2d 733, 735 (2d Cir. 1957)); *see also Carr v. PMS Fishing Corp.*, 191 F.3d 1, 4 (1st Cir. 1999) (" 'Privity or knowledge' . . . usually implies some degree of culpable participation or neglected duty on the shipowner's part: that, for example, it committed a negligent act, or knew of an unseaworthy condition but failed to remedy it, or through the exercise of reasonable diligence could have prevented the commission of the act or the onset of the condition.").

The LOL Act itself does not contemplate exoneration; rather, the concept of exoneration comes from Supplemental Rule F, which provides that a vessel owner's complaint seeking limitation of liability "may demand exoneration from as well as limitation of liability." Fed. R. Civ. P. Suppl. R. F(2). But limitation and exoneration are mutually exclusive, not synonymous, forms of relief; while limitation operates as a "*partial* exemption [from liability] to the extent of the value of the owner's interest in the vessel and her pending freight," exoneration is the "*complete* exoneration from

5

liability." Benedict on Admiralty Vol. 3, § 74 (emphasis added). "If no liability is found to exist, the petitioner is entitled to a decree of exoneration, and there is no need to consider the claim to limitation, for if no liability exists there is nothing to limit." *Petition of Trawler Snoopy, Inc.*, 268 F. Supp. 951, 953 (D. Me. 1967) (quotation marks omitted).

Thus, in a limitation proceeding, I engage in a two-step inquiry. First, I must determine whether the shipowner is entitled to exoneration, or, in other words, whether any "acts of negligence or unseaworthiness caused the casualty." *In re Bridge Constr. Servs. of Fla., Inc.*, 39 F. Supp. 3d 373, 382 (S.D.N.Y. 2014). If I find that the shipowner is not entitled to exoneration, I then move on to the second step, wherein I must determine whether the shipowner had knowledge or privity of the fault (i.e. the acts of negligence or unseaworthiness) that caused the casualty. *See Bensch*, 2 F.4th at 73.

I find that the Plaintiff's Complaint does not support exoneration. I agree with the Plaintiff that because the prospective claimants have defaulted, the well-pleaded factual allegations made in the Complaint are taken as true. *See Munson v. 1979 26 Cal Sailboat*, No. 2:21-cv-0418-KJM-CKD, 2022 WL 215119, at *2 (E.D. Cal. Jan. 25, 2022) ("Once default is entered, well-pleaded factual allegations in the operative complaint are generally taken as true . . . ."). Unfortunately, here, the Plaintiff's Complaint is thin on facts and heavy on legal conclusions.[4] Specifically, the

---

[4] The Complaint is also peppered with jargon and enshrouded in the lore and mystique of admiralty law. *See, e.g.*, Compl. ¶ 11 (ECF No. 1) ("All and singular the premises are true and within the admiralty and maritime jurisdiction of the United States and this Honorable Court."). It may serve shipowners to keep this area of law cloaked in mystery, but counsel would do well to write so that the

6

Complaint alleges only that the Mary E was seaworthy and safe, properly equipped and supplied, and "in all respects seaworthy and fit for the services for which she was engaged." Compl. ¶ 3.

Seaworthiness is certainly part of the exoneration equation, but negligence is a part of the equation too. The Complaint leaves me in the dark as to whether the knock-down could "have been prevented by the exercise of ordinary care, caution and maritime skill." *In re Bridge Constr. Servs. of Fla., Inc.*, 39 F. Supp. 3d at 383 (quotation marks omitted). The Complaint does not describe how the knock-down occurred, how the vessel was staffed, or whether there were unexpected weather conditions. The Complaint does not even state explicitly that there was no negligence attributable to the Plaintiff.[5] Rather, the Complaint declares that "[t]he Plaintiff *denies* that it caused or contributed to the injuries aforesaid by any negligence or fault on the part of the Plaintiff or of those for whom the Plaintiff is responsible." Compl. ¶ 7 (emphasis added). The Complaint further states that the Plaintiff "*desires . . . to* contest its liability" and "*den[ies]* any liability." Compl. ¶¶ 9–10 (emphasis added). Without more information, I am unable to conclude that Maine Maritime Museum is

---

Court can have a clearer sense of the Plaintiff's factual allegations and potential claimants can better understand their rights. The public cannot be expected to respect the law when it cannot make sense of it.

[5]    Even if it did aver that it was without culpability, the Complaint would also need to offer some factual support for the claim, as it did for the seaworthiness of the vessel. Just stating that the plaintiff is without negligence is a legal conclusion not a factual allegation.

completely without fault. As such, I cannot conclude that the Plaintiff is entitled to exoneration.[6]

Nor do I find that an order limiting liability is appropriate on the record before me. While the record here reflects that the procedural requirements under Federal Rule of Civil Procedure 55, Supplemental Rule F, and the LOL Act have been satisfied,[7] I cannot find that all of the substantive requirements of the LOL Act have been satisfied. A complaint seeking limitation of liability must "set forth the facts on the basis of which the right to limit liability is asserted" as well as "all facts necessary to enable the court to determine the amount to which the owner's liability shall be limited." Fed. R. Civ. P. Suppl. R. F(2). Here, the Complaint meets the second requirement as it clearly alleges the value of the vessel, but the allegations fail to satisfy the first requirement, which requires the Complaint to set forth the facts supporting a limitation of liability. "[A]n entitlement to limitation requires an antecedent finding that the vessel owner was not privy to, and had no knowledge of, the decisive act of negligence or condition of unseaworthiness." *Carr*, 191 F.3d at 4.[8]

---

[6] I also note that the fact that Maine Maritime Museum settled with the three claimants suggests that there may indeed have been some degree of fault that would make an order of exoneration inappropriate.

[7] First, my order of September 1, 2021, directing issuance of notice specified that claims must be filed on or before November 15, 2021. This complies with Supplemental Rule F's requirement that the date fixed for filing of claims "shall not be less than 30 days after issuance of the notice." Fed. R. Civ. P. Suppl. R. F(4). Second, Maine Maritime Museum has met its notice obligations under Supplemental Rule F(4). As the declaration of Plaintiff's counsel shows, Maine Maritime Museum (1) delivered notice to all known potential claimants, and (2) published notice in the *Portland Press Herald* once a week for four weeks prior to November 15, 2021. Decl. of William H. Welte ¶¶ 10–13 (ECF No. 21). Finally, counsel for the Plaintiff has submitted a declaration stating his belief that none of the potential plaintiffs "are minors or incompetent persons." Suppl. Decl. of William H. Welte ¶ 4 (ECF No. 39-1).

[8] The First Circuit has explained that where the shipowner is a corporation, the test for privity or knowledge "is whether culpable participation or neglect of duty can be attributed to an officer,

Once again, the Complaint lacks sufficient factual allegations to allow me to conclude that the Plaintiff acted without privity or knowledge. Although the Complaint "denies that any such loss, damage, injury and destruction was done, occasioned by, or occurred with any privity or knowledge of [the] Plaintiff," Compl. ¶ 7, the allegation suffers from the same defects mentioned above. I can take as true that the Plaintiff *denies* it was with privity or knowledge, but that does not establish that the Plaintiff *was* without privity or knowledge. It is also a legal conclusion, rather than a factual allegation. Accordingly, I decline to grant the Plaintiff's requested limitation of liability.

## CONCLUSION

For the reasons stated above, the Court DENIES the Plaintiff's motion for default judgment and limitation of liability or exoneration decree against non-appearing claimants.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 27th day of June, 2022.

---

managing agent, supervisor, or other high-level employee of the corporation." *Carr v. PMS Fishing Corp.*, 191 F.3d 1, 4 (1st Cir. 1999).