UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF THE MAINE MARITIME MUSEUM, AS OWNER OF THE SCHOONER MARY E, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | ) ) ) ) ) Docket No. 2:21-cv-00238-NT ) ) ) ) |

**ORDER ON MOTION FOR RELIEF FROM JUDGMENT
AND MOTION TO STRIKE**

Before me is the Claimant James Dotson's motion for relief from judgment (ECF No. 52) and the Maine Maritime Museum's motion to strike (ECF No. 54). For the reasons stated below, the motion to strike is **DENIED** and the motion for relief from judgment is **GRANTED**.

**FACTUAL BACKGROUND**

On August 20, 2021, the Maine Maritime Museum (the "**Museum**"), as owner and operator of the Schooner Mary E, filed a Complaint pursuant to the Limitation of Liability Act, 46 U.S.C. §§ 30501–12, and Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("**Supplemental Rule F**"). Compl. for Exoneration from or Limitation of Liability (ECF No. 1). The Complaint sought exoneration and limitation of liability for all losses, damages, or destruction caused by or resulting from the knockdown of the Mary E on July 30, 2021, while the vessel was carrying passengers

on a Kennebec River cruise that sailed out of Bath, Maine. Compl. for Exoneration from or Limitation of Liability ¶¶ 5, 9–10.

On September 1, 2021, I set out an Order Directing Issuance of Notice and Restraining Prosecution of Claims (the "**September 1 Order**"). In the September 1 Order, as is required under Supplemental Rule F, I established a monition period,[1] ending November 15, 2021, and issued a restraining order prohibiting the filing of any claim in any other court or jurisdiction. Order Directing Issuance of Notice and Restraining Prosecution of Claims ("**September 1 Order**") (ECF No. 10); *see* Fed. R. Civ. P. Supp. R. F(4). Additionally, my September 1 Order ordered the Museum to: (1) issue notice to "all persons asserting claims" related to the knockdown advising them of the November 15, 2021, deadline to file claims; (2) publish that notice in the *Portland Press Herald* once a week for four successive weeks prior to November 15; and (3) "mail a copy of the Notice to all known potential claimants." September 1 Order 3.

Three individuals filed claims against the Museum. On October 19, 2021, Karen Baldwin filed a claim. Answer, Claim & Countercl. (ECF No. 13). And on November 12, 2021, Allison Poirier and Thomas Poirier both filed claims. Answer & Claim (ECF No. 15); Answer & Claim (ECF No. 16). All three claimants of record subsequently agreed to dismiss their claims against the Museum with prejudice. *See* Stipulations of Dismissal of Claims (ECF Nos. 36, 38).

---

[1]   The term "monition period" describes the period of time a claimant has to make a claim.

On November 16, 2021, after the monition period had ended, the Plaintiff moved for an entry of default against all claimants who had not filed claims by the November 15, 2021 deadline. Pl.'s Mot. for Entry of Default (ECF No. 20). In support of that motion, the Museum submitted an affidavit of its counsel, who attested to the fact that he had mailed notice to all known potential claimants. Decl. of William H. Welte ("**Welte Decl.**") ¶¶ 9–13 (ECF No. 21). The attached list of recipients of the mailed notice does not identify what role each person played in the events surrounding the Mary E's knockdown, but it appears to include the names of passengers, crew, and at least one of the rescue vessels, Sea Tow/Sea Taxi, that arrived on the scene as a first responder and helped bring people to shore. Welte Decl. Ex. A—Names of Potential Claimants Given Notice (ECF No. 21-1). As is relevant here, the list did not include Bath Iron Works, which later testimony revealed was also involved with the rescue effort. *See* Decl. of Jason Morin ("**Morin Decl.**") ¶ 13 (ECF No. 45) (naming the "Bath Iron Works Company security vessel" as one of the "first responders"); Decl. of Jonathan B. Smith ("**Smith Decl.**") ¶ 7 (ECF No. 46) ("In what seemed like minutes [after the knockdown] units of the Bath Iron Works security, Bath Police, and SeaTow were on site and retrieving passengers.").

Based on the Museum's representation that it had complied with all requirements of Supplemental Rule F and my September 1 Order, the Clerk of Court granted the Museum's motion for entry of default on November 17, 2021. Order (ECF No. 22). Then, on September 26, 2022, with the understanding that "the Museum [had] mailed notice to known potential claimants," I granted the Museum's motion

3

for entry of default judgment and exoneration against claimants who had not timely brought claims. Default J. and Decree of Exoneration 2 (ECF No. 50).

On December 27, 2022, approximately three months after the entry of default judgment and exoneration, James Dotson ("**Dotson**" or "**the Claimant**") filed the instant motion for relief from judgment, seeking to reopen the limitation proceedings and file a new claim against the Museum. Claimant, James Dotson's, Mot. for Relief from J. Pursuant to F.R.C.P. Rules 55 and 60(b) (ECF No. 52); *see also* Claimant, James Dotson's Mem. of Law in Supp. of his Mot. for Relief from J. Pursuant to F.R.C.P. 55 and 60(b) ("**Dotson's Mem.**") (ECF No. 53). The Claimant alleges that he was an employee of Bath Iron Works and that he participated in the rescue efforts of passengers following the knockdown of the Mary E. Dotson's Mem. 1. Dotson says that he was injured during those rescue efforts, that those injuries necessitated two shoulder surgeries, and that he has been out of work since November of 2021 due to the severity of the injuries. Dotson's Mem. 1. Dotson states that he did not receive any mailed notice of the limitation proceeding from the Museum and that he never saw the printed notice in the *Portland Press Herald*, as he lives over an hour away from Portland, in Boothbay, Maine. Dotson's Mem. 2. Dotson says that he only learned about his rights as a claimant once he obtained counsel, which he only did after reading on Facebook in October of 2022 that passengers from the Mary E had successfully sued the Museum to recover for their injuries. Dotson's Mem. 2; Aff. of James Dotson ("**Dotson Aff.**") ¶¶ 18, 21 (ECF No. 53). On November 16, 2022, and December 27, 2022, before filing the instant motion, Dotson's counsel conferenced

4

with counsel for the Museum about Dotson's claim. Dotson's Mem. 3; Suppl. Conference Certificate (ECF No. 53-1).

## DISCUSSION

**I.    Standing**

Before diving into the merits of Dotson's motion for relief from judgment, I first address the Museum's motion to strike or, in the alternative, to deny Dotson's motion on the ground that he does not have standing. Maine Maritime Museum's Mot. to Strike Mot. of James Dotson for Relief from J. ("**Mot. to Strike**") 1 (ECF No. 54). The Museum argues that because Dotson was not a party to the action as of the date of entry of default judgment and exoneration, he may not seek relief pursuant to Rule 60 of the Federal Rules of Civil Procedure ("**Rule 60**")—the rule providing for relief from judgment. Mot. to Strike 2–3. As support, the Museum cites caselaw holding that "one who was not a party or its legal representative lacks standing to make the motion for relief from a judgment under [Rule 60]." *Disability L. Ctr. v. Mass. Dep't of Corr.*, No. 07-10463-MLW, 2017 WL 1042068, at *2 (D. Mass. Mar. 17, 2017) (internal quotation marks omitted).

I am not persuaded, however, that Dotson lacks the standing necessary to bring his motion. "Although Rule 60(b)[ ] would not ordinarily be available to non-parties to modify final judgments," some parties are "sufficiently connected and identified with" an underlying suit "to entitle them to standing to invoke Rule 60(b)[ ]." *Dunlop v. Pan Am. World Airways, Inc.*, 672 F.2d 1044, 1052 (2d Cir. 1982). For example, the Fifth Circuit recently held that workers involved in a ship collision who

5

did not file claims by the deadline imposed in the underlying limitation action nonetheless had standing to file a Rule 60 motion because "the Claimants *could have* been parties to the action." *In re GATX Third Aircraft Corp.*, 858 Fed. App'x. 692, 693 (5th Cir. 2021) (emphasis added). That is, the workers "ha[d] a close connection to the underlying case and interests that [were] strongly affected by it." *Id*. In this case, the Museum presents no evidence that Dotson could *not* have been a party to the action, and I find ample support for the opposite conclusion. Dotson, like the workers in *In re GATX Third Aircraft Corp.*, has a close connection to the underlying case because he was employed on a vessel that was involved in the incident on which the entire limitation action is based. And where Dotson claims to have been seriously injured in that incident and rendered unable to work, he adequately alleges that his interests are strongly affected by the action.

As such, I find that Dotson does have standing to bring his motion for relief from judgment. The Museum's motion to strike is denied.

## II. The Claimant's Motion for Relief from Judgment

I turn now to the Claimant's request that I set aside the default judgment and allow Dotson to file a claim against the Museum. Rule 60 states that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b).[2] Rule 60 dictates that a late claimant may be relieved from final judgment for the following reasons:

---

[2] The Claimant also cites Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("**Supplemental Rule F**") and Rule 55 of the Federal Rules of Civil Procedure ("**Rule 55**") in support of his motion. *See* Claimant, James Dotson's Mem. of Law in Supp. of his Mot. for Relief from J. Pursuant to F.R.C.P. 55 and 60(b)

6

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1)–(6). In addition, "[a] motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c).

"Although the burden of establishing [the grounds for permitting a late filing] rests with [the] defaulted party, the philosophy that actions should ordinarily be resolved on their merits[ ] dictates that a district court should resolve doubts in favor of a party seeking relief from the entry of a default." *In re G&J Fisheries, Inc.*, 598 F.

---

3 (ECF No. 53). I agree with the Museum, however, that a "court can set aside a final judgment by default only in accordance with Rule 60(b)." *In re Urbelis*, No. 15-cv-12358-ADB, 2018 WL 701350, at *3 n.4 (D. Mass. Feb. 2, 2018) (quoting *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 164 (1st Cir. 2004)). And, given that Rule 60 guides my analysis here, I do not apply the "for cause shown" or "for good cause" standards provided by Supplemental Rule F and Rule 55, respectively. Fed. R. Civ. P. Suppl. R. F(4); Fed. R. Civ. P. 55(c).

That said, I do think it is relevant that while Supplemental Rule F does not specifically address whether a claim can be filed after a default judgment has been entered, it otherwise imposes no serious impediment to a late filed claim. *Cf.* Fed. R. Civ. P. Suppl. R. A(2) ("The Federal Rules of Civil Procedure also apply to [actions for exoneration from or limitation of liability] . . . except to the extent that they are inconsistent with the[ ] Supplemental Rules."). Moreover, though the two rules are worded differently, "[t]he case law suggests that Rule F(4) essentially sets a standard of 'excusable neglect,' as does Rule 60(b)(1)." *In re Urbelis*, 2018 WL 701350, at *5 n.5.

Supp. 3d 18, 21 (D. Mass. 2022) (internal citation and quotation marks omitted). Importantly, however, "[r]elief from a tardy claim is not a matter of right—[i]t depends on an equitable showing." *In re Glob. Indus. Offshore, Inc.*, No. Civ. A. 97-3811, 2000 WL 1610384, at *1 (E.D. La. Oct. 26, 2000). A late claimant will only receive the relief he seeks if "the equities of the case" lie with him. *In re Gulf Inland Marine Corp.*, No. Civ. A. 97–2617, 1998 WL 560342, at *3 (E.D. La. Aug. 31, 1998).

A court's discretion under Rule 60 is not unbounded. "[R]elief under Rule 60(b) is extraordinary in nature and motions invoking that rule should be granted sparingly." *Nansamba v. N. Shore Med. Ctr., Inc.*, 727 F.3d 33, 37 (1st Cir. 2013) (quoting *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir.2002)). In evaluating Rule 60 motions, "courts consider: (1) the explanation for the delay, (2) whether the non-movant will be prejudiced and (3) whether the party requesting relief acted in good faith." *In re G&J Fisheries, Inc.*, 598 F. Supp. 3d at 21.

Here, the first and third factors are somewhat related.  Dotson asserts that he is entitled to relief due to "excusable neglect": he never received mailed notice from the Museum, he did not see the printed notice in the *Portland Press Herald* (and does not live in Portland), and he was not apprised of his legal rights until he obtained counsel, which was after the default judgment had already been entered. Dotson's Mem. 5, 7. The Museum responds that these proffered reasons do not suffice to set aside the default judgment.

As the Museum points out, Supplemental Rule F only requires that an entity seeking limitation of liability "mail a copy of the notice to every person known to have

made any claim against the vessel or the plaintiff arising out of the voyage or trip on which the claims sought to be limited arose." Fed. R. Civ. P. Suppl. R. F(4). Thus, on a literal reading of Supplemental Rule F, "[a]ctual notice is not required for 'possible' claimants; instead the petitioner/plaintiff is only required to mail the notice to 'known' claimants, whereas it is sufficient to provide potential claimants with constructive notice by publication." *In re Orion Dredging Servs., LLC*, No. 3:09-cv-358-J-25HTS, 2010 WL 497716, at *1 (M.D. Fla. Feb. 8, 2010).

The issue for the Museum is that it was required to comply not only with the strict wording of Supplemental Rule F, but also with my September 1 Order, which, in addition to mandating that the Museum mail notice to "every person known to have made a claim against" it, also directed the Museum to "mail a copy of the Notice to all known *potential* claimants."[3] September 1 Order 3–4. I find it extremely unlikely that first responders, like Bath Iron Works and its employees, were not known potential claimants given the facts that (1) Museum employees knew that Bath Iron Works—Dotson's employer—was involved with the rescue effort, and (2) another of the first responders, Sea Tow/Sea Taxi, was mailed notice of the limitation

---

[3] At the time the Museum filed its initial Complaint for Exoneration from or Limitation of Liability, no one had yet made a claim against it. Compl. for Exoneration from or Limitation of Liability ¶ 6 (ECF No. 1). I required the Museum to provide notice to known potential claimants because the universe of potential claimants was limited and it seemed that the identities of the individuals and entities involved in the incident were known to the Museum. Although Supplemental Rule F only requires notice to active claimants, broader notice requirements are "consistent with [Supplemental] Rule F." *In re Fagerlin*, No. C 08–5225 SI, 2009 WL 393772, at *7 (N.D. Cal. Feb. 13, 2009); *see also* Benedict on Admiralty Vol. 3, § 80 (Lexis 2022) ("The court may direct a further service or longer publication [than that outlined in Supplemental Rule F] if it deems it advisable.").

9

action. Morin Decl. ¶ 13; Smith Decl. ¶ 7; Welte Decl. Ex. A—Names of Potential Claimants Given Notice.

The September 1 Order, as well as the Museum's knowledge of Bath Iron Works' involvement in the rescue and its decision to mail another of the responding entities notice, distinguish this case from those cited by the Museum in which courts denied motions to file late claims. *See In re Orion Dredging Servs.*, 2010 WL 497716, at *1 (denying motion to file late claim because claimant was not entitled to actual notice under Supplemental Rule F); *In re GATX Third Aircraft Corp.*, 858 Fed. App'x. at 694 (denying motion for relief from judgment because at the time notice was issued, the claimants had not made any claims and thus were not "known" claimants entitled to actual notice under Supplemental Rule F); *Collins v. Double J. Marine, LLC*, No. 19-1415, 2019 WL 3081630, at *2 (E.D. La. July 15, 2019) (denying request to file a late claim because shipowner had complied with the notice requirements of Supplemental Rule F). Here, unlike in other cases, the Museum did not comply with the notice requirements set forth by this Court. *Cf.* Benedict on Admiralty Vol. 3, § 97 n.5 (Lexis 2022) ("If there has been any irregularity in the proceedings, specifically as to notice to claimants, claimants who have not been notified would probably have the right of independent suit against the plaintiff, notwithstanding the limitation proceeding. It is, therefore, essential that the requirements of Rule F and any order of the court as to publication and notification be strictly followed.").

Other considerations also impact the analysis of whether Dotson's delay was excusable and whether he acted in good faith. Dotson is a resident of Boothbay,

Maine, which is over an hour away from Portland and has its own newspaper. Dotson's Mem. 6. "Courts have held that it was an abuse of discretion to deny permission to late file claims . . . when the notice was not published in the claimant's geographical area." *Lloyd's Leasing Ltd. v. Bates*, 902 F.2d 368, 371 (5th Cir. 1990). Although the Museum argues that articles about the limitation proceeding were published in the *Boothbay Register*, Resp. of Pl. in Opp'n to Mot. of James Dotson for Relief from J. ("**Museum's Resp.**") 7–8 (ECF No. 55), it presents no support for the idea that articles mentioning a limitation proceeding suffice to meet the notice requirements of Supplemental Rule F. The lack of published notice in the Claimant's geographical area thus offers further support for his explanation as to why the neglect was excusable.

The timeliness of the motion also supports granting Dotson relief. While Dotson alleges to have been injured on July 30, 2021, the date of the knockdown of the Mary E, he also alleges that he "was not fully apprised by his doctors of the significant extent of his shoulder injuries until November of 2021," after the date on which default was entered in the Museum's favor. Dotson Mem. 1, 5. While I acknowledge that Dotson failed to file the instant motion until a year after the entry of default and three months after entry of default judgment—a delay that in another context I might consider too lengthy to obtain relief—the motion's tardiness here is offset by the fact that Dotson was not provided with the notice required by my September 1 Order. Once he was notified of the limitation action through a chance encounter on Facebook, Dotson diligently pursued his claim. *See* Dotson Aff. ¶¶ 18,

11

21–22. And, ultimately, the Claimant's motion for relief from judgment was filed within "a reasonable time" after entry of the default judgment and well under the one-year cut-off date dictated by Rule 60. *See* Fed. R. Civ. P. 60(c)(1).

As to the second factor, prejudice, it is undisputed that allowing Dotson's claim could result in "the Museum losing the complete exoneration from liability afforded by the court's [September 1 Order]." Museum's Resp. 10. This factor weighs in favor of denying the motion for relief.

On the other hand, I also consider the equities, which here clearly favor the Claimant. *See Nansamba*, 727 F.3d at 38–39 ("The 'determination [as to whether a party is entitled to relief from judgment] is at bottom an equitable one . . . .'" (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993))). There is a longstanding principle underlying admiralty law that courts must not let technicalities and formal imperfections "interfere with the due administration of justice." *In re N.J. Barging Corp.*, 168 F. Supp. 925, 928 (S.D.N.Y. 1958) (quoting *Bombace v. Am. Bauxite Co.*, 39 F.2d 867, 869 (5th Cir. 1930)); *see also Jappinen v. Can. S.S. Lines*, 417 F.2d 189, 190 (6th Cir. 1969) ("Admiralty is administered with equitable liberality and a simultaneous freedom from restraints or frustrations occasioned by technicalities or formal imperfections." (quoting *Tex. Gulf Sulfur Co. v. Blue Stack Towing Co.*, 313 F.2d 359, 362 (5th Cir. 1963))). Though, in general, "the Limitation Act should be applied in a manner that preserves the protections intended to benefit shipowners," *In re Miss Belmar II Fishing Inc.*, No. 11–4757 (MLC)(LHG), 2014 WL 1217771, at *8 (D.N.J. Mar. 24, 2014), I am also wary of setting a precedent

whereby shipowners who fail to fulfill notice obligations are nonetheless shielded from claims.

I am aware of no other area of the law wherein a potential tortfeasor can race into court to force the people it may have injured to file their claims within months of an incident upon pain of losing all right to do so. The Limitation of Liability Act has been roundly criticized, and while I do not seek to wade into those waters, it is easy to see why many consider it an inequitable throwback to an earlier time.[4] The irony of the Museum fighting to preclude a claim by an individual who came to the rescue of the Mary E is particularly disturbing. In this case, justice would not be served by denying Dotson's motion for relief from judgment.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Museum's motion to strike (ECF No. 54) and **GRANTS** Dotson's motion for relief from judgment (ECF No. 52).

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 17th day of March, 2023.

---

[4] *See, e.g.*, *Holzhauer v. Golden Gate Bridge Highway & Transp. Dist.*, No. 13-cv-02862-JST, 2016 WL 7242108, at *2 (N.D. Cal. Dec. 15, 2016) (citation omitted) (noting the critique that the Limitation of Liability Act is "an anachronism, a holdover from the days when encouraging commerce by sea was considered more important than providing full redress to victims of maritime accidents").